UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULAINE FOSTER,

       Plaintiff,                                Hon. Richard Alan Enslen

v.                                                Case No. 1:06-CV-513

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 51 years of age at the time of the ALJ's decision. (Tr. 16). She successfully completed two years of college and worked previously as a salon owner/cosmetologist, home health aide, administrative assistant, and office clerk. (Tr. 16, 133, 141-47).

Plaintiff applied for benefits on December 3, 2002, alleging that she had been disabled since July 15, 2002, due to depression and anxiety. (Tr. 54-56, 127). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 24-53). On June 14, 2005, Plaintiff appeared before ALJ James Prothro, with testimony being offered by Plaintiff and vocational expert, Susan Rowe. (Tr. 418-66). In a written decision dated December 16, 2005, the ALJ determined that Plaintiff was not disabled. (Tr. 15-23). The Appeals Council declined to review the ALJ's decision, rendering it the Commissioner's final decision in the matter. (Tr. 5-8). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on December 31, 2003. (Tr. 16, 68-72); *see also*, 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

**MEDICAL HISTORY**

On August 7, 2002, Plaintiff was examined by Stella Dial, Ed.D. (Tr. 264). Plaintiff reported that she was experiencing "much anger" as a result of the recent death of her daughter. (Tr. 258, 264). The following week Plaintiff reported that she felt "sad" and "empty." (Tr. 264-65). On October 8, 2002, Plaintiff reported that she was now raising her granddaughter and was "feeling overwhelmed by life changes." (Tr. 263).

On December 30, 2002, Plaintiff underwent a "total abdominal hysterectomy" to treat uterine fibroids, as well as bladder repair surgery. (Tr. 183-99).

On April 21, 2003, Plaintiff was examined by Dr. Ivan Landan. (Tr. 200-01). Plaintiff reported that she was experiencing dysesthesias and paresthesias in her left thigh. (Tr. 200). Plaintiff denied experiencing pain or weakness in her back. An examination of Plaintiff's left lower extremity revealed hyperesthesia and dysesthesias. Plaintiff walked with a normal gait, however, and the examination revealed no evidence of weakness, atrophy, or fasciculations. Dr. Landan diagnosed Plaintiff with "a meralgia paresthetica which is compression of the lateral femoral cutaneous nerve." Plaintiff was prescribed Neurontin. *Id.*

On April 30, 2003, Plaintiff was examined by Dr. Dial. (Tr. 260). Plaintiff reported that she was experiencing anxiety and depression because of the "many changes in her life." Plaintiff was diagnosed with adjustment disorder with mixed anxiety and depressed mood. Her GAF score was rated as 60.[1] *Id.*

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 2000) (hereinafter DSM-IV). A GAF score of 60 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

Dr. Dial's treatment notes regarding her treatment of Plaintiff between May 12, 2003, and October 17, 2003, reveal that Plaintiff made significant progress in therapy. (Tr. 253-58). Plaintiff's prognosis was characterized as "good" and her GAF scores increased from 65 to 70.[2]  *Id.*

On June 2, 2003, Plaintiff was involved in an automobile accident. (Tr. 305). Immediately following this accident, x-rays were taken of various portions of Plaintiff's body. X-rays of her left shoulder were "within normal limits." (Tr. 204). X-rays of her cervical spine were "negative." (Tr. 205, 208-09). X-rays of her lumbar and thoracic spine were "negative for acute abnormality." (Tr. 206-07). Following this accident, Plaintiff began to experience pain and weakness in her left knee. (Tr. 322). A subsequent MRI of Plaintiff's left knee revealed a tear of the posterior horn medial meniscus, for which arthroscopic surgery was performed on October 21, 2003. (Tr. 287, 322).

On November 7, 2003, Julia Crowther, Ph.D. completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 226-39). Determining that Plaintiff suffered from adjustment disorder with anxiety and depressed mood, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) and Section 12.06 (Anxiety-Related Disorders) of the Listing of Impairments. (Tr. 227-35). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for these particular impairments. (Tr. 236). Specifically, the doctor concluded that Plaintiff suffered no restrictions in the activities of daily living or in maintaining social functioning, experienced moderate difficulties in maintaining concentration, persistence or pace, and never experienced episodes of decompensation. *Id.*

---

[2] GAF scores of 65-70 indicate that the individual is experiencing "some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 34.

5

Dr. Crowther also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 240-43). Plaintiff's abilities were characterized as "moderately limited" in three categories. With respect to the remaining 17 categories, the doctor reported that Plaintiff was "not significantly limited." (Tr. 240-42).

On November 12, 2003, Plaintiff was examined by Dr. Fredric Levin. (Tr. 285). Plaintiff reported that her left knee was "doing quite well" and that "for the most part her pain is relieved." *Id.*

Following a November 25, 2003 examination of Plaintiff, Dr. Dial reported Plaintiff's GAF score as 73.[3] (Tr. 251).

When examined on December 18, 2003, Plaintiff reported that her left knee was "markedly improved." (Tr. 297). She reported, however, that she was experiencing "increased right knee pain." An examination of her right knee revealed tenderness but no evidence of "discernable" swelling or warmth. The doctor also observed a "palpable" click on flexion/extension. *Id.* A December 23, 2003 MRI of Plaintiff's right knee revealed a "small" tear of the anterior horn of the medial meniscus, "mild" joint space narrowing, and "very small" joint effusion. (Tr. 321).

On January 28, 2004, Plaintiff was examined by Dr. Levin. (Tr. 284-85). Plaintiff reported that she was experiencing right knee pain. (Tr. 285). An examination of her right knee revealed "full and painless range of motion" with no evidence of deformity, swelling, or instability.

---

[3] A GAF score of 73 indicates that "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors; no more than slight impairment in social, occupational, or school functioning." DSM-IV at 34.

(Tr. 284). With respect to the MRI examination which purportedly indicated that Plaintiff suffered a tear of the anterior horn of the medial meniscus, the doctor reported that such injuries are "quite rare, and that the radiologist's interpretation [of the MRI] might be overread." *Id.*

On February 25, 2004, Plaintiff reported that her right knee only "bothers her off and on." (Tr. 284). Plaintiff also reported that she was "sleeping better" and that her medication "helps in calming [her] anxiety." (Tr. 295). An examination of Plaintiff's right knee revealed tenderness, but Plaintiff walked with a "normal" gait. *Id.* When examined on May 17, 2004, Plaintiff reported that "for the most part her right knee doesn't hurt." (Tr. 283).

On November 8, 2004, Plaintiff participated in an MRI examination of her right knee, the results of which were "negative. . .for definite ligamentous or meniscal abnormality." (Tr. 375). An MRI examination of Plaintiff's left knee, performed the same day, revealed "tears on the posterior horns of the medial and lateral menisci." (Tr. 374). On January 18, 2005, Dr. Thomas Metalic performed surgery to repair Plaintiff's left knee. (Tr. 399). Specifically, the doctor performed "arthroscopy and partial medial and lateral meniscectomies." *Id.* On January 31, 2005, Dr. Matelic reported that Plaintiff was able to return to work on February 3, 2005, provided she be afforded a "sit/stand option." (Tr. 391).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[4] If the Commissioner can make a

---

[4] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

 2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

## B. The ALJ's Decision

The ALJ determined that Plaintiff suffers from the following severe impairments: (1) medial meniscus tears of the left knee (status-post October 2003 arthroscopy and lateral meniscectomy); (2) a history of bladder repair surgery with an incidence of urinary incontinence; (3) degenerative disc disease of the lumbar spine; and (4) adjustment disorder with mixed anxiety and depressed mood. (Tr. 18-19). The ALJ concluded that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 20). The ALJ determined that despite these impairments, Plaintiff retained the ability to perform her past relevant as an office clerk and administrative assistant. (Tr. 21). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

---

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

### 1. The ALJ's Decision is Supported by Substantial Evidence

Plaintiff bears the burden of demonstrating her entitlement to benefits, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following limitations: (1) she can frequently lift 10 pounds, but can lift 20 pounds only occasionally; (2) she can only occasionally bend, stoop, crouch, or crawl; and (3) she must be able to sit or stand at her discretion. (Tr. 21). With respect to Plaintiff's mental impairments the ALJ further concluded that Plaintiff experiences mild restrictions in the activities of daily living, mild difficulties in maintaining social functioning, mild deficiencies in concentration, persistence or pace, and has experienced no episodes of decompensation of extended duration. (Tr. 19). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

A vocational expert testified that an individual with Plaintiff's RFC would be able to perform Plaintiff's past relevant work as an office clerk and administrative assistant, "both as [Plaintiff] had previously performed these jobs and as they are generally performed in the national economy." (Tr. 21). Accordingly, the ALJ concluded that Plaintiff was not disabled.

    a. The ALJ Properly Discounted Plaintiff's Subjective Allegations

Plaintiff asserts that her testimony regarding her pain and limitations demonstrates that she is disabled. The ALJ discounted Plaintiff's subjective allegations of pain and disability, however, concluding that Plaintiff's "testimony is not fully credible." (Tr. 20).

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

There is no question that Plaintiff endured one of the worst losses anyone can experience, the loss of a child under violent circumstances. However, as the ALJ correctly summarized:

11

> There is a situational component to the claimant's affective disorder with intensified psychological symptoms following the tragic death of her daughter in July 2002. The claimant is independent in self-care and grooming tasks. Since the alleged onset date, the claimant has involved herself as an advocate against road rage and she earned a bachelor's college degree, which she received in 2004. Additionally, she and her husband are raising their 4-year old granddaughter.

(Tr. 19).

During the relevant time period Plaintiff, despite her impairments, pursued an "active" life inconsistent with her allegations of disabling pain and limitation. Her reported activities, including but not limited to raising her young granddaughter, are inconsistent with her allegations of disabling pain and limitation. These activities are inconsistent with Plaintiff's subjective allegations of total disability. The objective medical evidence further fails to support Plaintiff's subjective allegations. The Court further notes that none of Plaintiff's care providers have imposed on Plaintiff limitations which are inconsistent with the ALJ's RFC determination. In sum, there exists substantial evidence to support the ALJ's credibility determination.

    b. The ALJ Properly Assessed the Medical Evidence

Between March 28, 2005, and May 6, 2005, Plaintiff was examined by Dr. Dial on three occasions. (Tr. 358-59). Following each of these examinations, the doctor reported Plaintiff's GAF score as 45.[5] Plaintiff asserts that these GAF scores establishes her disability. Plaintiff further asserts that because Dr. Dial was her treating physician, the ALJ was obligated to accord controlling weight to her opinions.

---

[5] A GAF score of 45 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning." DSM-IV at 34.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Accordingly, the medical opinions and diagnoses of treating physicians are given substantial deference, and if such opinions and diagnoses are uncontradicted, complete deference is appropriate. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ is not bound by conclusory statements, particularly when unsupported by detailed objective criteria and documentation. *See Cohen*, 964 F.2d at 528. The ALJ need not defer to an opinion contradicted by substantial medical evidence. *See Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

Plaintiff's argument overlooks the very important fact that her insured status expired on December 31, 2003, more than 15 months before Dr. Dial expressed the particular opinions at issue. Thus, while the evidence in question may be relevant to the question whether Plaintiff was capable of performing work activities in 2005, it sheds no light on the question before the ALJ, namely whether Plaintiff was disabled prior to December 31, 2003. In this respect, the Court notes that throughout 2003 Dr. Dial consistently rated Plaintiff's GAF score between 65-73. (Tr. 251, 253-58). Such opinions are inconsistent with the conclusion that Plaintiff was disabled. Moreover, during the time period in question, Dr. Dial never imposed upon Plaintiff limitations inconsistent with the ALJ's RFC determination. In sum, the ALJ properly evaluated the medical evidence in this

matter and correctly declined to afford less than controlling weight to the opinions expressed by Dr. Dial in 2005, long after the expiration of Plaintiff's insured status.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence.  Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Date:  August 15, 2007                                             /s/ Ellen S. Carmody
                                                                                ELLEN S. CARMODY
                                                                                United States Magistrate Judge